UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kewlmetal Inc., *et al.*, | ) |
| Plaintiffs, | ) 2:15-cv-01008 JWS |
| vs. | ) ORDER AND OPINION |
| Bike Builders Bible, Inc., | ) [Re: Motion at Docket 17] |
| Defendant. | ) |

## I. MOTION PRESENTED

At docket 17 defendant Bike Builders Bible, Inc. ("BBB") moves for an order dismissing the complaint of plaintiffs Kewlmetal, Inc. and Joseph B. Gschweng (collectively, "Kewlmetal") pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or, alternatively, transferring venue to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) or § 1406(a). Kewlmetal opposes at docket 26 and submits evidence at docket 27. BBB replies at docket 28. Oral argument was heard on December 14, 2015.

## II. BACKGROUND

Kewlmetal owns a patent titled "Motorcycle Rake and Trail Adjuster," which "relates to the modification of a motorcycle and covers bolt-on neck kits that incorporate

a false neck."[1]  BBB is a California corporation with a principal place of business in California.[2]  Kewlmetal's complaint alleges claims against BBB for patent infringement and common law unfair competition based on BBB's "advertising, marketing, offering for sale, selling, and/or distributing . . . Big Wheel and other Bolt-On Neck Kits under the American Suspension label" that infringe upon Kewlmetal's patent ("the infringing products").[3]

## III.  STANDARD OF REVIEW

Venue challenges may be brought under Rule 12(b)(3) and 28 U.S.C. § 1406.[4]  If the district court rules that venue is improper, it must either dismiss the case or, "if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."[5]  The decision whether to dismiss or transfer the case "in the interests of justice" is committed to the court's discretion.[6]  The general preference, however, is for the case to be transferred instead of dismissed altogether.[7]

The plaintiff bears the burden of showing facts that establish that venue is proper.[8]  Although the court need not accept the pleadings as true and may consider

---

[1] Doc. 1 at 3 ¶ 11.  *See also* Kewlmetal's patent, doc. 1-1 at 2-13.

[2] *Id*. at 1 ¶ 3.

[3] *Id*. at 3-4 ¶ 14.

[4] *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009).

[5] 28 U.S.C. § 1406(a).

[6] *In re Hall, Bayoutree Associates, Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991).

[7] *See Brodt v. Cty. of Harford*, 10 F. Supp. 3d 198, 203 (D.D.C. 2014); *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001).

[8] *Cf. Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) (holding in context of summary judgment that plaintiff bears burden of showing venue's propriety).  *See also Chey v. Orbitz Worldwide, Inc.*, 983 F. Supp. 2d 1219, 1227 (D. Haw. 2013); *Allstar Mktg. Grp.*, 666 F. Supp. 2d at 1126; 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed.) (stating that the plaintiff should bear the burden

facts outside the pleadings,[9] it "must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."[10] If the parties raise genuine factual issues, the district court has discretion to hold the Rule 12(b)(3) motion in abeyance until it holds an evidentiary hearing on the disputed facts, or to "deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the record eliminates any genuine factual issue."[11]

Even if venue is proper, a district court may transfer venue to another district pursuant to 28 U.S.C. § 1404(a). When deciding a motion for transfer of venue under § 1404(a), which displaces the common law doctrine of forum non conveniens as to transfers between federal district courts,[12] "a court must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum. The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."[13] Whether a motion for transfer of venue should be granted is committed to the discretion of the district court.[14]

---

of proof because "it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.").

[9]*Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

[10]*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

[11]*Id*. at 1139-40.

[12]*Miskow v. Boeing Co.*, 664 F.2d 205, 207 (9th Cir. 1981).

[13]*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

[14]*Arley v. United Pac. Ins. Co.*, 379 F.2d 183, 185 n.1 (9th Cir. 1967).

## IV.  DISCUSSION

**A.   Kewlmetal Has Made a Prima Facie Showing That BBB Is Subject To Personal Jurisdiction in Arizona**

28 U.S.C. § 1400(b) states in pertinent part that a "civil action for patent infringement may be brought in the judicial district where the defendant resides."[15]  BBB "resides" in Arizona if it is subject to personal jurisdiction here.[16]  This determination involves two inquires: whether Arizona's "long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process."[17]  Because Arizona's long-arm statute confers jurisdiction to the maximum extent permissible under the due process clause,[18] the statutory inquiry collapses into the constitutional analysis,[19] which is governed by the law of the Court of Appeals for the Federal Circuit.[20]

Due process allows the exercise of both general and specific personal jurisdiction.  The broader of the two, general personal jurisdiction, "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those

---

[15] 28 U.S.C. § 1400(b).

[16] 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business.").  *See also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990).

[17] *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)).

[18] Ariz. R. Civ. P. 4.2(a).

[19] *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004).

[20] *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994), *cert. dismissed*, 512 U.S. 1273 (1994).  *See also 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("[W]hen analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies.").

contacts."[21]  "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic."[22]

### 1.     Kewlmetal has not established general personal jurisdiction

In *Perkins v. Benguet Consolidated Mining Co.,* the Supreme Court held that an Ohio court could subject a foreign corporation to general personal jurisdiction where that corporation, among other things, maintained an office in the state, conducted company business from that office, and distributed salary checks drawn from Ohio bank accounts.[23]  The court held that the exercise of general jurisdiction did not offend due process because the defendant had "been carrying on in Ohio a continuous and systematic, but limited, part of its general business."[24]  In contrast, the Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall,*[25] held that Texas lacked general personal jurisdiction over a helicopter company that did not have a place of business in Texas or a business license in that state.  The Supreme Court concluded that the defendant's contacts with Texas were not "continuous and systematic" despite the fact that the defendant "sen[t] its chief executive officer to Houston for a contract-negotiation session; accept[ed] into its New York bank account checks drawn on a Houston bank; purchas[ed] helicopters, equipment, and training services from [a Texas helicopter company] for substantial sums; and sen[t] personnel to [Texas] for training."[26]

---

[21]*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

[22]*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

[23]342 U.S. 437, 448 (1952).

[24]*Id.*

[25]466 U.S. at 416.

[26]*Id*.

Neither the Supreme Court nor the Federal Circuit has "outlined a specific test to follow when analyzing whether a defendant's activities within a forum state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination."[27] The "degree of contact with the forum state that is necessary to establish general jurisdiction is quite high," however.[28] For instance, in *Campbell Pet Co. v. Miale*, the Federal Circuit held that general personal jurisdiction was lacking even though the defendants made twelve sales over eight years to customers in the forum state of Washington and maintained a sales website that was accessible to Washington consumers.[29] The website did not show "continuous and systematic" contacts, the court held, because it was not specifically directed at customers in Washington and did not appear to have generated any sales in Washington.[30] The court held that the average 1.5 sales per year to Washington customers was similarly insufficient because of the sales' "very small volume," the fact that the sales totaled "less than $14,000 in gross revenue (approximately two percent of the defendants' total sales), and in four of those years [the defendants] made no sales in Washington at all."[31] The court held that this was "a classic case of sporadic and insubstantial contacts with the forum state, which are not sufficient to establish general jurisdiction over the defendants in the forum."[32]

---

[27]*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

[28]*Campbell Pet Co. v. Miale*, 542 F.3d 879, 882 (Fed. Cir. 2008) (internal quotation marks omitted). *See also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

[29]542 F.3d 879, 883-84 (Fed. Cir. 2008).

[30]*Id*. at 884.

[31]*Id*.

[32]*Id*.

1    Kewlmetal asserts that BBB "continually does business in Arizona" through both direct and indirect sales to Arizona customers.[33] With regard to direct sales, Kewlmetal points to a list of BBB's transactions that shows that BBB had "at least 25" Arizona customers between June 2012 and June 2015.[34] This list includes 36 separate invoices: six in year one, 14 in year two, and 16 in year three. Kewlmetal also asserts that its evidence shows that BBB has attended trade shows in Arizona and that it markets its products online specifically to Arizona customers, but these assertions are contradicted by evidence in the record.[35]

With regard to indirect sales, Kewlmetal cites the deposition transcript of Vincent Costa ("Costa"), a "Principal Shareholder" of BBB,[36] and the affidavit of Kewlmetal's founder, Joseph B. Gschweng ("Gschweng"). When asked whether BBB sells its products through distributers, Costa testified as follows: "We sell to a lot of different people. If they [resell] the product, they [resell] the product."[37] Costa stated that he knew of one company in particular that resold BBB's products, Zodiac, but he did not know where Zodiac advertises or resells BBB's products.[38] He testified that there are "probably" other companies like Zodiac that resell BBB's products, but he could not name them at the time.[39] When asked whether BBB's products are resold in Arizona,

---

[33] Doc. 26 at 6-7.

[34] Doc. 27-2 at 83-92.

[35] *See* Affidavit of Joseph B. Gschweng, doc. 27-1 at 2 ¶ 10 (stating that he saw the allegedly infringing products at trade shows on several occasions, but not that BBB was either the seller or present); *id.* at 2 ¶ 7 (stating that he has seen the allegedly infringing products advertised and sold in Arizona, but not that BBB was the seller); *id.* at 5 (an advertisement that does not appear to be from BBB); *id.* at 7 (an advertisement that does not appear to be from BBB); *id.* at 9 (a buyers guide listing that does not appear to be from BBB).

[36] Doc. 17-1 at 1 ¶ 3.

[37] Doc. 27-2 at 17:14-18:22.

[38] *Id.* at 18:23-19:14, 21:11-13.

[39] *Id.* at 24:11-16.

1 Costa's answers were evasive,[40] but he eventually testified that he did not know of any such companies.[41] When confronted with an advertisement for the infringing product that was apparently being sold in Arizona by a company named "Baggers, Inc.,"[42] Costa testified that he was unaware if BBB has ever done any business with that company.[43] For his part, Gschweng states that he has personally observed various third-parties reselling the infringing products to Arizona residents "[c]ontinually since August of 2014."[44]

Kewlmetal has not shown that BBB's activities in Arizona are sufficiently continuous and systematic to support jurisdiction over a cause of action unrelated to those activities. Like the defendant in *Helicopteros*, BBB has no physical presence or license to do business in the forum state. Kewlmetal's allegations and evidence merely show that BBB engages in sales transactions, directly and indirectly, with Arizona customers. Although Kewlmetal shows that BBB engages in direct transactions with Arizona consumers on a fairly regular basis, it cites no cases where a court has found this factor alone to be sufficient.[45] Further, Kewlmetal's claims regarding BBB's indirect

---

[40]*Id.* at 21:11-24:8.

[41]*Id.* at 24:4-7.

[42]Doc. 27-1 at 9.

[43]Doc. 27-2 at 32:23-25.

[44]Doc. 27-1 at 2 ¶ 7.

[45]The two cases Kewlmetal cites are inapposite because they concern specific, not general, personal jurisdiction. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80, 104 S. Ct. 1473, 1481, 79 L. Ed. 2d 790 (1984) (holding that although the "respondent's activities in the forum may not be so substantial as to support jurisdiction over a cause of action unrelated to those activities," specific personal jurisdiction existed because "the cause of action [arose] out of the very activity being conducted, in part," in the forum state); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 334 (5th Cir. 1982) (same). *But see Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (holding that sales and marketing efforts in forum state were not sufficient to give rise to general personal jurisdiction) (cited with approval in *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012)).

sales are unpersuasive because Kewlmetal neither alleges facts nor cites evidence regarding the volume of such sales in Arizona. In sum, Kewlmetal has not shown that BBB's Arizona sales are similar in quantity or quality to the defendant's contacts in *Perkins*. General personal jurisdiction does not lie.

### 2. Kewlmetal has made a prima facie showing that BBB is subject to specific personal jurisdiction in Arizona

In "contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[46] The Federal Circuit applies a three-prong test for determining whether specific personal jurisdiction exists: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair."[47] The plaintiff bears the burden of establishing these first two minimum-contacts factors; if the court concludes that the plaintiff has met this burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable.[48] Where the court is ruling on the personal jurisdiction question based on written materials and not an evidentiary hearing, "a plaintiff need only to [sic] make a prima facie showing that defendants are subject to personal jurisdiction."[49] Akin to the "procedure for assessing facts in a disputed summary judgment motion under Fed. R. Civ. P. 56,"[50] the "court must accept the uncontroverted allegations in the plaintiff's

---

[46]*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citation omitted).

[47]*3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).

[48]*Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

[49]*Cf. Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (ruling in the context of a Rule 12(b)(2) motion).

[50]*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."[51]

### a. The complaint adequately alleges that BBB purposefully directed its activities at Arizona residents and Kewlmetal's claims arise out of those activities

Kewlmetal alleges that BBB is purposefully selling the infringing products to Arizona customers in two ways: directly and indirectly. Kewlmetal's allegation that BBB is selling the infringing products directly to Arizona's consumers[52] is refuted by Costa's affidavit[53] and BBB's list of Arizona transactions.[54] Kewlmetal's evidence, in the form of Geschweng's affidavit, does not create a genuine issue of fact because Geschweng merely shows that the infringing products are sold in Arizona—not that BBB is the direct seller.[55]

Kewlmetal's assertion of specific jurisdiction therefore depends on its allegation that BBB is actively selling the infringing products in Arizona indirectly through third-party distributors.[56] The complaint alleges that BBB has "purposefully injected its infringing products into the stream of commerce, knowing that the infringing products would be sold in Arizona,"[57] and that such sales take place on at least six different websites, in stores, and at trade shows.[58]

---

[51] *Id.* at 1139.

[52] *See, e.g.,* doc. 1 at 3-4 ¶ 14.

[53] Doc. 17-1 at 1 ¶ 12 ("Bike Builders Bible, Inc., does not directly sell the Fork Kit to any entities or individuals in Arizona.").

[54] *See* BBB's response to Kewlmetal's Sixth Request for Production of Documents at doc. 27-2 at 79, 83-92.

[55] Doc. 27-1.

[56] Doc. 1 at 3-4 ¶ 14, 5 ¶¶ 25-28.

[57] *Id.* at 2 ¶ 6.

[58] *Id.* at 4 ¶ 16.

BBB cannot dispute that Kewlmetal's claims arise out of or relate to BBB's sales and marketing activities with respect to the allegedly infringing product. Instead, it disputes Kewlmetal's allegation that it purposefully directs such activities toward Arizona residents. Under Kewlmetal's stream-of-commerce theory, it is an open question whether "mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum is required."[59] There is no need for the court to reach this question here, however, because *Beverly Hills Fan* makes clear that due process is satisfied when companies use established distribution channels into the forum state.[60] Kewlmetal's complaint alleges that BBB injected its infringing products into the stream of commerce knowing they will likely be sold in Arizona. Under *Beverly Hills Fan*, this is a prima facie showing that BBB is purposefully directing its infringing activities toward Arizona residents.[61]

The evidence in the record currently before the court does not conclusively refute Kewlmetal's allegations. In response to a request for admission, BBB admits that *it* sells its products only in California, and it "ships products to other states, including Arizona," but denies that it has shipped the infringing products to Arizona.[62] This does not contradict Kewlmetal's allegation that BBB uses third-party distributors to sell the infringing products in Arizona. Further, Costa's affidavit states that BBB "does not

---

[59]*Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1381 (Fed. Cir. 2015).

[60]*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565-66 (Fed. Cir. 1994).

[61]*See id.* at 1566 ("When viewed in the light of the allegations and the uncontroverted assertions in the affidavits, plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there.").

[62]*See, e.g.* BBB's response to Kewlmetal's Request for Admission 5, doc. 27-2 at 64 ("Defendant only sells in California, but ships products to other states, including Arizona. However, Defendant denies that it has shipped any products to Arizona, which are involved in this Lawsuit, particularly the bolt on neck, the slip fit neck, or the wedge.").

*directly* sell the Fork Kit to any entities or individuals in Arizona,"[63] perhaps implying that BBB performs such sales indirectly through intermediaries.  Finally, at his deposition Costa does not deny that BBB sells the infringing products in Arizona through third-party distributors.  Rather, he states that he is unaware of such sales.  Based on the evidence currently before the court, whether there exists an established distribution channel into Arizona for the infringing products is a question of fact that precludes dismissal.

      **b.**    **Whether exercising jurisdiction would be reasonable and fair**

To determine whether the exercise of personal jurisdiction comports with "fair play and substantial justice," courts consider five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies."[64]  BBB's motion does not address any of these factors—it addresses only the doctrine of general personal jurisdiction.[65]  BBB argues in reply that Arizona's exercise of jurisdiction would be unreasonable based primarily on its contention that travel from California to Arizona would be burdensome.[66]  This argument is unpersuasive.[67]

---

[63]Doc. 17-1 at 1 ¶ 12 (emphasis added).

[64]*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[65]Doc. 17.

[66]Doc. 28 at 7-8.

[67]*See, e.g., Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (holding that requiring the defendant to travel from Brazil to California would not be unduly burdensome considering, among other things, modern "'progress in communications and transportation.'") (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

**B.     BBB's Motion to Transfer Venue**

"[A] plaintiff's choice of forum should rarely be disturbed."[68] 28 U.S.C. § 1404(a) authorizes a district court to disturb the plaintiff's choice, however, and transfer venue to another district in which the action "might have been brought" "[f]or the convenience of parties and witnesses" and "in the interest of justice." Section 1404(a) has been described as a "federal judicial housekeeping measure" that allows a district court to "authorize a change of courtrooms" based on an "individualized, case-by-case consideration of convenience and fairness."[69]

To guide a district court's § 1404(a) decision, the Supreme Court has "provided a list of 'private interest factors' affecting the convenience of the litigants, and a list of 'public interest factors' affecting the convenience of the forum."[70] The "private interest factors" include: the "relative ease of access to sources of proof;" "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" the "possibility of view of premises, if view would be appropriate to the action;" and "all other practical problems that make trial of a case easy, expeditious and inexpensive."[71] The "public interest factors" include: the "[a]dministrative difficulties" caused by court congestion; the "local interest in having localized controversies decided at home;" the interest "in having the trial of a diversity case in a forum that is at home with the state law that must govern the case;" and the interest in not burdening with jury duty "people of a community which has no relation to the litigation."[72] These factors

---

[68]*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

[69]*Van Dusen v. Barrack*, 376 U.S. 612, 622, 636-37 (1964).

[70]*Piper Aircraft Co.*, 454 U.S. at 241.

[71]*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

[72]*Id*. at 508-09.

parallel the "fair play and substantial justice" factors discussed above.[73]  The moving party bears the burden of establishing that transfer is proper.[74]  BBB has not met its burden here.

### 1. Private Interests

According to BBB, the two private interests that justify transfer to the Central District of California[75] are the ease and access to sources of proof and the cost and inconvenience of obtaining witnesses.

#### a. Relative ease of access to sources of proof

BBB argues that the "alleged infringing documents are all in California, as well as all of the products related to such alleged infringement."[76]  But the documentary and physical proof in this case will likely be maintained by both parties, and Kewlmetal's documents and products are located in Arizona.  The parties' relative ease of access to sources of proof is neutral.

#### b. Cost and inconvenience of obtaining witnesses

BBB asserts that its witnesses are based in California.[77]  Even so, this factor is neutral because Kewlmetal's witnesses live in Arizona.[78]  Transfer would merely shift rather than eliminate the cost and inconvenience of obtaining witnesses.[79]

---

[73] *Menken v. Emm*, 503 F.3d 1050, 1063 (9th Cir. 2007) (Bybee, J., concurring).

[74] *See Trout Unlimited v. U.S. Dep't of Agric.*, 944 F.Supp. 13, 16 (D.D.C. 1996).

[75] The parties do not dispute that the Central District of California would also have personal jurisdiction over BBB.

[76] Doc. 28 at 9.

[77] Doc. 17 at 8.

[78] Doc. 27-1 at 3 ¶ 19.

[79] *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**2.    Public Interests**

The only private interest that BBB identifies is California's local interest in having this allegedly localized controversy decided at home. BBB asserts that this case arises out of its product, "which is based in California and not connected to Arizona in any way."[80] More accurately stated, this case arises out of BBB's alleged sale of products that infringe on Kewlmetal's patent. For the reasons stated above, BBB has not shown that this is a controversy local to California. This factor does not apply.

## V.  CONCLUSION

For the reasons stated above, BBB's motion is **DENIED** without prejudice. The court desires to resolve promptly and finally the fact question whether there is an established distribution channel into Arizona for the allegedly infringing products. Accordingly, BBB's motion is denied without prejudice to its refiling within 90 days, after the parties conduct discovery. If BBB refiles its motion, either party may request an evidentiary hearing and the court will determine whether such a hearing is necessary. BBB will not be required to file an answer until 90 days from the date of this order or, if applicable, after the court resolves its renewed motion to dismiss, whichever date is later.

DATED this 15th day of December, 2015.

/s/  JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[80]Doc. 17 at 8.